# EXHIBIT B

THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| CHM MARITIME, SAPI de CV,<br><br>Claimant,<br><br>v.<br><br>MICOPERI S.r.l.,<br><br>Respondent. | Arbitration No.: 07151401 |

## FINAL AWARD

### Procedural Background

Claimant, CHM MARITIME, SAPI de CV, ("CHM") commenced this arbitration by filing its Demand for Arbitration with the Maritime Arbitration Association of The United States ("MAA") on July 15, 2014. It sought recovery of unpaid hire for four barges which it had chartered to Respondent, Micoperi, S.r.l. ("Micoperi"). Micoperi filed its Answer on August 4, 2014. With the permission of the Arbitrator, Micoperi filed an Amended Response dated October 29, 2014, in which it made a counterclaim or claim for set-off for various costs and expenses connected with its charter of a fifth barge, the OMC-251, which was owned by Cashman Equipment Company, Inc. ("Cashman"), a company related to CHM.

CHM moved to strike the Amended Response of Micoperi on various grounds, including that the stated counterclaims had previously been asserted by Micoperi in its answer to a suit commenced by Cashman in the United States District Court in Massachusetts to recover unpaid charter hire on the OMC-251[1]. In an Interim Order dated January 15, 2014, the Arbitrator granted CHM's Motion to Strike Micoperi's Amended Response on several grounds, including

---

[1] Cashman Equipment Corp. v. Micoperi, S.r.l., (D.Ma. Case No.: 14-13641-RGS).

1

the practical consideration that the claims pending in Federal Court should be dealt with there, rather than in this arbitration. The charter party for the OMC-251 did not contain an arbitration clause.

On January 16, 2015, CHM filed a Motion for Summary Award. Since there was no factual dispute that a significant sum remained unpaid for the hire of the four barges, an Award was issued dated March 9, 2015, granting CHM's motion in all but one respect. The parties had a factual dispute over the allocation of a $300,000 payment Micoperi made to Cashman on July 3, 2014. Micoperi argued this payment was intended to be credited against the amount owed to CHM for hire, while CHM argued that the payment had been made to Cashman and properly applied to sums due and owing to it by Micoperi. The Arbitrator reserved the issue of the proper allocation for further disposition.

After engaging in additional discovery on the question of the $300,000 payment, the parties agreed to waive a formal hearing and submit the issue for final disposition on briefs alone, pursuant to MAA Rule 20(g). Having considered the briefs and exhibits that have been submitted, the undersigned makes the following Final Award.

## Facts[2]

Micoperi had dealings with two related companies, CHM, which had a bank account in Mexico, and Cashman, which had a bank account in Massachusetts. Although there was some confusion over invoices, amounts due and wire transfers to the proper bank account, for the most part, the parties were able to straighten out such problems as they arose. For example, by Invoice No. 382, dated March 27, 2013, CHM mistakenly instructed Micoperi to wire payment in the amount of $100,000 to Cashman's bank account. That mistake was recognized and

---

[2] Reference is made to the facts set forth in the Award issued March 9, 2015, which are incorporated herein by reference.

2

corrected. Another example: Micoperi wire transferred the sum of $1,500,000 to Cashman's account on October 10, 2013. Cashman credited part of it to the balance owed CHM and part to amounts owed Cashman for the purchase of a crane. Mr. Andrew Saunders, Cashman's General Counsel, notified Micoperi of this allocation on October 15, 2013. There was no objection. Again, on November 13, 2013, Micoperi mistakenly wire transferred $850,000 to Cashman's account. Mr. Saunders notified Micoperi of the mistake and that the funds had been credited to CHM. There was an additional lump sum payment on account of $500,000 on May 8, 2014, that was sent to CHM and properly credited to CHM. In all other instances, except for the $300,000 in question, Micoperi's wire transfers were directed to the proper account and corresponded with the exact amount of the corresponding invoice.

On July 2, 2015, Micoperi initiated a wire transfer of $300,000 to Cashman's bank account. Receipt was confirmed the next morning, July 3, 2015. Presumably, neither CHM nor Cashman knew exactly when this wire transfer was initiated by Micoperi. Cashman would have known on July 2, 2014, of course, that it had earlier invoiced Micoperi for sums due to it related to the OMC-251, the total of which was less than $300,000. Since Cashman contended that Micoperi was responsible for certain repairs to the OMC-251, Mr. Saunders also emailed repair estimates on July 2, 2014, and requested that Micoperi "immediately contact the yard of your choosing and arrange for the work to be perfoms [sic] and the barge restored to the original on-hire condition."

Upon receipt of the $300,000 wire transfer, Mr. Saunders emailed Mr. Ray Riddle of Micoperi and gave him the following direction:

> This wire is to CEC and should be applied to the A/R for the OMC-251. I have told them in the past that CEC invoices get paid to Rockland and CHM invoices get paid to Banamex/Citi. See the first attachment. We need to do repairs and this can fund those repairs and also the cost CEC incurred hiring CHM

3

> to send the tug to stand by the barge back in April. I do not think this will cover all those costs as well as the repair days which are still running. See the attached which I sent to Micoperi yesterday concerning the need to repair the barge.

Mr. Saunders then emailed Micoperi on July 3, 2015, and confirmed receipt of the U.S. $300,000 by Cashman and advised that Cashman would use the funds to pay open receivables and "the remainder will be used to move forward with the repairs to the OMC-251...." Several days later, on July 7, 2014, Cashman forwarded to Micoperi two invoices, one for $137,000, the amount of the lowest repair estimate for the barge, and one for $66,000, representing 22 additional days of hire during the repair period.

Mr. Giovanni Aloi of Micoperi testified that he protested Cashman's intended allocation of the $300,000 to Mr. Eduardo Gallastequi, an attorney for CHM in Mexico. Nothing contemporaneous in writing from Micoperi has been submitted into evidence reflecting this protest or any disagreement by Micoperi with Mr. Saunders' stated allocation.

## Discussion

CHM argues that the $300,000 wire was received by Cashman and applied to amounts owed to Cashman, as advised by Mr. Saunders. It contends that since Cashman is not a party to this arbitration, the Arbitrator has no authority to void payments made to Cashman or to order restitution of funds from Cashman to CHM.

Micoperi argues that its course of dealings with Cashman reflects that the lump sum payments not matched to an exact invoice amount were intended to be credited to its debt to CHM and that "no reasonable businessman" would have paid for disputed obligations not yet invoiced when an undisputed obligation was long overdue.

At the outset, I should make clear that this is not a matter of voiding a payment or awarding restitution. I would agree with CHM that I have no authority to make that ruling

4

involving Cashman, a non-party to this arbitration. Moreover, I do not think that is the remedy Micoperi is seeking. Instead, I am considering the issue before me from the point of view of the affirmative defense of payment, for which Micoperi bears the burden of proof. I am also mindful of the practical consideration mentioned in a previous order that the matter before me does not deal with the disputes arising out of the OMC-251 charter. Those are in litigation before the District Court of Massachusetts and are best resolved there.

Micoperi's "course of dealing" contention requires examination. In two instances prior to the $300,000 payment, Micoperi mistakenly sent lump sum payments of $1,500,000 and $850,000 respectively to the Cashman bank account. In the first of those, the amount was allocated in part to CHM and in part to Cashman. In the second, the full amount was allocated to CHM. In both cases, the disposition of the funds was described in an email from Cashman and agreed to by all parties. Thus, if it can be said that a course of dealing had been established, it was that Cashman would notify Micoperi and clarify how it was going to apply the "misdirected" funds. In that sense, the Cashman response to the receipt of the $300,000 wire on July 3, 2014, was the same as in prior cases. It notified Micoperi by email how it intended to apply the funds and other than the conversation between Mr. Aloi and Mr. Gallastequi in Mexico, there was no written objection or any response at all, for that matter, from Micoperi to Mr. Saunders' notification.

Micoperi, with some logic, argues that no businessman would pay $300,000 before being invoiced in that full amount, especially when there were disputes regarding the invoices Cashman had issued. The problem with this argument is that there is no explanation or evidence as to why the Micoperi businessmen involved made no protest in writing directly to Cashman regarding an alternative allocation of the $300,000 after they knew what Cashman intended it to

be. Moreover, all of this discussion begs the question: what is the legal basis for arguing that a course of dealing, if established, would require the reallocation of the final payment made to Cashman? What case law provides that Micoperi's intent, if established, would require the redirection of the stated allocation of Cashman, who believed Micoperi owed funds to it as well as to CHM. Micoperi has cited none.

In the context of a course of dealing in which the parties worked out mistakenly directed funds but made no changes to the allocation of the $300,000 payment to Cashman, there is insufficient evidence to support Micoperi's contention that the $300,000 payment was mistakenly credited to Cashman. Micoperi has, therefore, failed to carry its burden of proving the affirmative defense of payment by a preponderance of the evidence. That amount plus interest is hereby awarded to CHM in addition to the amount previously awarded. Accordingly, the Final Award in this proceeding shall be as follows:

(a) By Award dated March 9, 2015, the sum of $2,740,705.92, in principal and interest, plus post award interest accruing from that date at $1,044.18 per day.

(b) By Final Award dated August 5, 2015, the additional sum of $300,000 principal, plus interest of $58,876.12 plus post award interest accruing from that date at $147.94 per day.

The parties will split the arbitration fees equally. Any amount on deposit in excess of the Arbitrator's fees shall be returned to the parties.

This 5th day of August, 2015.

_____
Robert S. Glenn, Jr., Arbitrator